Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

*Counsel for Plaintiff*

[Additional Counsel in Signature Block]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, Derivatively on behalf of TANDEM DIABETES CARE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JOHN F. SHERIDAN, REBECCA B. ROBERTSON, DICK P. ALLEN,  KIM D. BLICKENSTAFF, MYOUNGIL CHA, PEYTON R. HOWELL, JOAO PAULO FALCAO MALAGUEIRA,  KATHLEEN MCGRODDY-GOETZ, RAJWANT S. SODHI, and CHRISTOPHER J. TWOMEY, <br><br> Defendants, <br><br> -and- <br><br> TANDEM DIABETES CARE, INC., <br><br> Nominal Defendant. | Case No. **'24CV0608 JM   VET** <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Stephen Bushansky by his undersigned attorneys, brings this stockholder derivative action on behalf of nominal defendant Tandem Diabetes Care, Inc. ("Tandem" or the "Company") against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties, and other misconduct that resulted in material damage to the Company and its stockholders. These allegations are made upon personal knowledge with respect to Plaintiff

- 1 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

and, as to all other matters, upon information and belief based upon the investigation and analysis by Plaintiff's counsel, including, among other things, a review of the Company's press releases and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, transcripts of Tandem conference calls with financial analysts and investors, news reports, financial analyst reports, the complaint filed in a securities class action lawsuit against the Company, and other publicly available information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

I.     **NATURE OF THE ACTION**

1.     This is a stockholder derivative action brought against the current members of the Tandem Board for their breaches of fiduciary duties and violations of the federal securities laws, as well as other misconduct, which resulted in substantial damage to the Company and its stockholders.

2.     Tandem manufactures and sells insulin pumps for patients with diabetes. Customer retention and satisfaction is key to the Company's growth. Indeed, in the Company's public filings, Tandem, its directors, and officers acknowledge that a "key to maintaining and growing our revenue is the retention of a high percentage of our customers."

3.     In February 2022, Tandem reported its financial results for the fourth quarter of 2021 and full year 2021, including 25% year-over-year revenue growth and a 15% increase in insulin pump shipments year-over-year. Tandem provided guidance regarding its expectations for 2022, including sales in the range of $845 million to $860 million, representing annual sales growth of 20% to 23%. Subsequently, Tandem *increased* its guidance and Tandem's Chief Financial Officer ("CFO") Leigh A. Vosseler ("Vosseler") represented that the Company was poised to "outperform expectations" and meet profitability goals.

4.     However, in the second quarter of 2022, Tandem disclosed that its guidance given only a few months earlier would not be met due to inflation, pandemic-related factors, and competition. Chief Executive Officer ("CEO") John F. Sheridan ("Sheridan") and CFO Vosseler

downplayed these "headwinds," representing that the Company would quickly overcome these challenges, that the economic challenges were already factored in its guidance, and that the effects of the pandemic were waning.

5.     On November 2, 2022, the Company abruptly changed its optimistic guidance for 2022, projecting sales of only $800 to $805 million, down from the range of $835 to $845 publicly provided only three months earlier. In a related conference call, Tandem's CEO pinned the reversal on pandemic-related pressures, an intensified "competitive environment," and economic conditions, including inflation and the threat of recession, factors the Company had previously downplayed and assured investors were merely temporary and waning.

6.     In the wake of the disclosure, the Company's stock dropped over 30% the next day and financial analysts cut their price targets for Tandem's stock. Tandem continued to negatively revise its 2023 financial guidance based on competitive pressures and its Chief Commercial Officer ("CCO") and Chief Operating Officer ("COO") suddenly resigned.

7.     A securities class action lawsuit has been filed against Tandem, its CEO, and its CFO (the "Securities Class Action") in this Court. As such, the Company is now subject to substantial liability and will be forced to expend substantial sums to defend itself, as well as its directors and officers.

8.     As a result of the Individual Defendants' breaches of fiduciary duty and other misconduct, Tandem has sustained substantial damage and irreparable injury to its reputation. Through this action, Plaintiff seeks to recover for the Company its damages and remediate the internal control weaknesses that afflict Tandem.

9.     Plaintiff did not make a demand prior to bringing this action because it would be futile. The Company's directors are neither disinterested nor independent. In the absence of this action, Tandem will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**II.      JURISDICTION AND VENUE**

10.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and under Section 21D of the Exchange Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

11.      The Court has jurisdiction over each Defendant named herein because Tandem maintains its headquarters and does substantial business in this District. As such, each Defendant is an individual or corporation who has sufficient minimum contacts with this District to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.      This action was not brought collusively to confer jurisdiction on a court of the United States that it would not otherwise have.

13.      Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), where the Company maintains its headquarters and where it conducts substantial business.

**III.      PARTIES**

**A.      Plaintiff**

14.      Plaintiff Stephen Bushansky purchased Tandem stock in November 2013 and has held Tandem common stock continuously since that time. As such, Plaintiff was a shareholder at the time of the transactions complained of herein.

**B.      Defendants**

**1.      Nominal Defendant Tandem Diabetes Care, Inc.**

15.      Nominal Defendant Tandem is incorporated under the laws of Delaware with its principal executive offices located at 12400 High Bluff Drive San Diego, CA 92130. Tandem's common shares trade on the Nasdaq Stock Market under the ticker symbol "TNDM."

## 2.   Individual Defendants

16.     Defendant Sheridan is the President and CEO of Tandem and has been a director since 2019. Sheridan has served in several leadership roles at the Company, including as Tandem's Executive Vice President and Chief Operating Officer since April 2013. As of January 31, 2023, Sheridan owns 13,999 Tandem shares. Since 2020, Sheridan received the following compensation:

| YEAR | SALARY | STOCK AWARDS | OPTIONS AWARDS | NON-EQUITY INCENTIVE PLAN COMPENSATION | ALL OTHER COMPENSATION | TOTAL |
|------|--------|--------------|----------------|----------------------------------------|------------------------|-------|
| 2022 | $710,700 | $3,452,202 | $1,700,348 | $359,418 | $155,847 | $6,378,515 |
| 2021 | $690,000 | $2,069,974 | $2,069,998 | $905,370 | $4,540 | $5,739,882 |
| 2020 | $600,000 | $1,079,971 | $1,619,976 | $422,692 | $7,715 | $3,790,739[1] |

17.     Defendant Rebecca B. Robertson ("Robertson") is a Tandem director since 2019, Chair of the Board since 2023, and is a member of the Compensation Committee. As of January 31, 2023, Robertson owns 2,205 Tandem shares. In 2022, Robertson received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|------------------------------|--------------|-------|
| $79,083 | $179,977 | $259,060 |

18.     Defendant Dick P. Allen ("Allen") is a Tandem director since 2007, Chair of the Nominating and Corporate Governance Committee, and a member of the Audit Committee. Allen also served as Chair of the Board from August 2007 to January 2013 and from January 2016 to February 2019. As of January 31, 2023, Allen owns 31,097 Tandem shares. In 2022, Allen received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|------------------------------|--------------|-------|
| $110,550 | $179,977 | $290,527 |

19.     Defendant Kim D. Blickenstaff ("Blickenstaff") is the former Chair, Executive Chair, President and Chief Executive Officer of Tandem, and has been a director since 2007. As of January 31, 2023, Blickenstaff owns 215,847 Tandem shares. In 2022, Blickenstaff received the following compensation:

---

[1] Total includes a $60,385 bonus.

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
| --- | --- | --- |
| $130,083 | $179,977 | $310,060 |

20.     Defendant Myoungil Cha ("Cha") is a Tandem director since 2022 and is a member of the Compensation Committee. In 2022, Cha received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
| --- | --- | --- |
| $18,083 | $299,971 | $318,054 |

21.     Defendant Peyton R. Howell ("Howell") is a Tandem director since 2020 and is Chair of the Compensation Committee. As of January 31, 2023, Howell owns 5,550 Tandem shares. In 2022, Howell received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
| --- | --- | --- |
| $62,000 | $179,977 | $241,977 |

22.     Defendant Joao Paulo Falcao Malagueira ("Malagueira") is a Tandem director since 2022 and is a member of the Audit Committee. In 2022, Malagueira received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
| --- | --- | --- |
| $30,713 | $299,971 | $330,684 |

23.     Defendant Kathleen McGroddy-Goetz ("McGroddy-Goetz") is a Tandem director since 2022 and is a member of the Nominating and Corporate Governance Committee and the Privacy and Security Subcommittee. As of January 31, 2023, McGroddy-Goetz owns 4,055 Tandem shares. In 2022, McGroddy-Goetz received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
| --- | --- | --- |
| $62,217 | $179,977 | $242,194 |

24.     Defendant Rajwant S. Sodhi ("Sodhi") is a Tandem director since 2021 and is a member of the Nominating and Corporate Governance Committee and the Privacy and Security Subcommittee. As of January 31, 2023, Sodhi owns 2,873 Tandem shares. In 2022, Sodhi received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
| --- | --- | --- |
| $62,217 | $179,977 | $242,194 |

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

25.     Defendant Christopher J. Twomey ("Twomey") is a Tandem director since 2013 and is Chair of the Audit Committee. As of January 31, 2023, Twomey owns 16,777 Tandem shares. In 2022, Twomey received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
| --- | --- | --- |
| $76,000 | $179,977 | $255,977 |

## IV.     THE INDIVIDUAL DEFENDANTS' DUTIES

26.     By reason of their positions as officers or directors of Tandem and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe Tandem and its shareholders, fiduciary obligations of loyalty, good faith, due care, and candor, and were and are required to use their utmost ability to control, manage, and oversee Tandem in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Tandem and its shareholders to benefit all shareholders equally and not in furtherance of their own personal interests or benefit.

27.     The Individual Defendants, because of their positions of control and authority as directors and officers of Tandem, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

28.     As officers and directors of a publicly traded company whose common stock was registered with the SEC and traded on the Nasdaq Stock Market, the Individual Defendants also owed a duty to ensure the dissemination of accurate, complete, and truthful information concerning Tandem's financial condition, operations, products, internal controls, and business prospects. In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all material facts so that the market price of the Company's shares would be based upon accurate information. In order to meet these duties, the Individual Defendants were required to exercise reasonable control and supervision over Tandem's management, policies, and internal controls.

29.     At all times relevant hereto, the Individual Defendants were the agents of each other and Tandem and were always acting within the course and scope of such agency.

30. The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Tandem.

**A.   Duties Under The Code Of Business Conduct And Ethics For Employees And Directors**

31. Tandem's Code of Business Conduct and Ethics for Employees and Directors ("Code of Conduct") imposes a responsibility on all Tandem employees and the Board "to foster a culture of fairness, honesty, and accountability within the Company."

32. The Code of Conduct requires the reporting of any violation of the Code of Conduct to an immediate supervisor or a Compliance Officer.

33. The Code of Conduct requires that all employees and the Board comply with "all applicable laws, rules, and regulations, as well as the listing standards of the stock exchange on which the Company's securities are then-listed for trading."

34. The Code of Conduct prohibits the making of "false or misleading statements about the Company or its competitors" which is "inconsistent with the Company's intentions to have a reputation for integrity, and potentially harmful to the Company's business." The Code of Conduct prohibits all employees and the Board from taking "unfair advantage of anyone through misuse of confidential information, misrepresentation of material facts or any other unfair business practice."

35. The Code of Conduct emphasizes the maintenance of accurate and reliable books, records and financial statements:

> The integrity, reliability and accuracy of the Company's books, records, and financial statements is fundamental to the Company's continued future business success. No [employee or director] may cause the Company to enter into a transaction with the intent to document or record it in a deceptive or unlawful manner. In addition, no [employee or director] may create any false or artificial documentation or book entry for any transaction entered into by the Company. Similarly, officers and [employees] who have the responsibility for accounting and financial reporting matters have a responsibility to accurately record all funds, assets, and transactions in the Company's books and records.

36. The Code of Conduct emphasizes the development and maintenance of disclosure controls and procedures: "The Company's disclosure controls and procedures are designed to help

ensure that the Company's public disclosures are full, fair and accurate, that they fairly present its financial condition and results of operations, and that they are timely and understandable."

37.     The Code of Conduct requires the reporting of "questionable accounting or auditing conduct or practices" directly to the Audit Committee or the Compliance Officer.

### B.     Additional Duties Of Audit Committee Members

38.     The Audit Committee Charter sets forth additional duties for members of the Audit Committee and provides that members are obligated to assist the Board in its oversight of, among other things, internal audit, financial reporting and legal matters; the integrity of the Company's financial statements; and the Company's compliance with legal, regulatory, and public disclosure requirements.

39.     The Audit Committee members are required to, among other things:

- Review and discuss the Company's overall audit plan (both internal and external) with the independent auditors, management and the internal audit team (to the extent applicable) that is responsible for preparing the Company's financial statements.

- Review and discuss with management the Company's quarterly and annual financial statements and any report or opinion by the independent auditors, prior to distribution to the public or filing with the SEC.

- Review and discuss with management earnings press releases and whether and to what extent earnings guidance and similar information shall be disclosed publicly by the Company, including non-GAAP measures.

- Review and discuss with management and the independent auditors, prior to the filing of the Company's Quarterly Reports on Forms 10-Q and Annual Report on Forms 10-K, the Company's quarterly and annual financial statements and the Company's related disclosures under "Management's

Discussion and Analysis of the Financial Condition and Results of Operations."

- Review and discuss with management and the independent auditors, prior to the filing of the Company's Quarterly Reports on Forms 10-Q and Annual Report on Forms 10-K, such issues as may be brought to the Committee's attention by the independent auditors and any significant financial reporting issues.

- Review and discuss any alleged fraud involving management or any employee of the Company with a significant role in the Company's internal controls over financial reporting that are disclosed to the Audit Committee.

- Oversee management's design and maintenance of the Company's internal control over financial reporting and disclosure controls and procedures … including reviewing and discussing with management, and the independent auditor, the certification and reports of management and the independent auditor required in the Company's Quarterly Reports on Form 10-Q and Annual Report on Form 10-K concerning the Company's internal control over financial reporting and disclosure controls and procedures, the adequacy of such controls, and any remedial steps being undertaken to address any material weaknesses or significant deficiencies in internal control over financial reporting.

- Review and discuss with management and, as appropriate, the independent auditors the Company's risk management and risk assessment guidelines and policies related to the Company's accounting and financial risk exposures and the steps taken by management to monitor and control these exposures.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**C.     Additional Duties Of Nominating And Corporate Governance Committee Members**

40.     The Charter of the Nominating and Corporate Governance Committee sets forth additional duties for its members, including obligations relating to overseeing the development and adequacy of the Corporate Governance Guidelines including, at least annually, reviewing and recommending to the Board changes, if any, to "the Company's governance and compliance practices generally, and the Company's policies, procedures and controls for ensuring compliance, as established by management and the Board, including without limitation the Company's Code of Business Conduct and Ethics for Employees and Directors, Code of Business Conduct and Ethics for Chief Executive Officer and Other Senior Financial Officers, Insider Trading Policy, [and] Related Party Transaction Policy and Communication Policy …."

41.     Members of the Nominating and Corporate Governance Committee are also charged with the following duties, among others:

- Oversee implementation by management of the Company's policies, procedures, and practices for ensuring compliance with applicable legal and regulatory requirements, as well as codes, programs and policies as established by management and the Board, including without limitation the Governance and Compliance Policies, and recommend any proposed changes to the Governance and Compliance Policies to the Board.

- Meet with, and receive and review reports from the Company's legal counsel concerning compliance matters (other than those relating to financial matters, which are within the purview of the Audit Committee), including without limitation (i) complaints received from internal and external sources, such as the Company's compliance hotline, (ii) industry practices and trends, and (iii) enhancements to the Company's governance and compliance practices generally, and the Governance and Compliance Policies specifically.

- Promptly refer all compliance matters regarding financial matters to the Audit Committee, and with respect to all other significant compliance matters, promptly notify the Chair of the Audit Committee of the initiation of any such significant compliance matters and keep the Chair of the Audit Committee reasonably apprised of the status of any such significant compliance matters.

- Authorize or oversee investigations into any matters within the Committee's scope of responsibility as described in the Nominating and Corporate Governance Committee Charter.

## V.    SUBSTANTIVE ALLEGATIONS

### A.    The Individual Defendants Acknowledged The Need To Implement And Monitor Internal Controls Regarding The Material Risks Over Tandem's Core Operations

42.    On February 24, 2021, Tandem filed with the SEC its Annual Report on Form 10-K (the "2020 10-K"), which was signed by Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey.

43.    In the 2020 10-K, Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey acknowledged their awareness of the materials risks in connection with customer retention in the face of the introduction of competitive products:

> A key to maintaining and growing our revenue is the retention of a high percentage of our customers due to the potentially significant revenue generated from ongoing purchases of disposable insulin cartridges and other supplies. In addition, our pumps are designed and tested to remain effective for at least four years and a satisfied customer may consider purchasing another product from us when the time comes to replace the pump. We have developed retention programs aimed at our customers, their caregivers and healthcare providers, which include training specific to our products, ongoing support by our sales and clinical employees, and technical support and customer service. Demand for our products from our existing customers could decline or could fail to increase in line with our projections as a result of a number of factors, ***including the introduction of competitive products ….***

44.    In the 2020 10-K, Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey acknowledged their awareness of the materials risks in connection with operating in a competitive environment:

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

***The medical device industry is intensely competitive***, subject to rapid change and highly sensitive to the introduction of new products, treatment techniques or technologies, as well as other activities of industry participants. We believe our products compete, and will continue to compete, directly with a number of traditional insulin pumps, as well as other methods for the treatment of diabetes, including multiple daily injection (MDI) therapy. Our primary competitors are major medical device companies that are publicly traded companies or divisions or subsidiaries of publicly traded companies, including Insulet and Medtronic MiniMed.

45.     In the 2020 10-K, Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey acknowledged their awareness of the competitive advantage enjoyed by the Company's competitors due to offering features not currently employed by Tandem's products and the materials risks posed thereby:

Our key competitors, most notably Medtronic, enjoy several competitive advantages over us…. In some instances, our competitors offer products that include features that we do not currently offer. For instance, Insulet offers an insulin pump with a tubeless delivery system that does not utilize an infusion set and Medtronic recently announced the acquisition of a connected insulin pen delivery device.

46.     In the 2020 10-K, Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey also acknowledged their awareness of the materials risks in connection with staffing shortages due to the pandemic: "The COVID-19 global pandemic, or other similar outbreaks or epidemics, may have an adverse effect on the overall productivity of our workforce, and we expect to continue to take extraordinary measures to protect the health and safety of our employees and our business partners and reduce the risk of disruptions to our operations."

47.     All subsequent Quarterly Reports and Annual Reports throughout 2021 and 2022, including the Company's Annual Report on Form 10-K filed with the SEC on February 22, 2022, for the period ended December 31, 2021 (the "2021 10-K"), which was signed by Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey, contained similar statements acknowledging the risks in connection with customer retention, the competitive landscape in the insulin pump industry, and the effects of the pandemic on staffing.

**B.     The Company Represents That It Is Poised To Succeed In A Post-Pandemic Market**

48.     On February 22, 2022, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing fourth quarter and full year 2021 financial results, including

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

$210 million in revenue for the fourth quarter, representing 25% year-over-year growth. Tandem also reported a 15% year-over-year increase in pump shipments and a renewal of 60% of the Company's approximately 65,000 pump warranties that expired in 2021. Tandem provided 2022 sales guidance in the range of $845 million to $860 million, reflecting an adjusted EBITDA of 14% to 15% of sales.

49.     On May 4, 2022, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its first quarter 2022 financial results and providing 2022 financial guidance including expected sales in the range of $850 million to $865 million, reflecting annual sales growth of 21% to 23% year-over-year, and an expected gross margin of approximately 54%, reflecting an adjusted EBITDA of 14% to 15% of sales. The Company further reported revenue of $175.9 million and 12% growth in insulin pump shipments.

50.     On the same day, in a conference call with financial analysts and investors, CFO Vosseller touted Tandem's "strong start" to 2022 and stated that "U.S. sales outperformed expectations, and we are on track with international sales and operational execution against our profitability goals." Vosseller also commented on the optimistic 2022 guidance:

> As we look to the remainder of the year ahead, ***we are increasing our 2022 worldwide sales expectations*** to a range of $850 million to $865 million, reflecting a growth rate of 21% to 23%. This is based primarily on our strong Q1 results in the U.S., and so we have increased our U.S. sales guidance to a range of $635 million to $645 million and are reaffirming our [outside the U.S.] expectations of $215 million to $220 million.

51.     On August 3, 2022, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing second quarter 2022 financial results and revised full year 2022 guidance, including expected sales between $835 to $845 million, representing 19%-20% growth over the previous year. In the press release, the Company also revised its gross margin and adjusted EBITDA figures, with an expected gross margin of approximately 52%-53% compared to the prior guidance of 54%, reflecting an adjusted EBITDA of approximately 11% of sales, well below the prior guidance of 14% to 15% of sales.

52.     On the same day, in a conference call with financial analysts and investors, Defendant Sheridan touted the Company's exceptional performance in the second quarter despite "a more

challenging operating environment compared to recent years" and Tandem's progress and ability "to navigate new headwinds to our business." CFO Vosseller pointed to the Company's consistent record quarterly sales: "The past few years we've been able to consistently demonstrate record quarterly sales and we achieved this milestone once again in the second quarter. The fundamentals of our business remain intact." Vosseller stated that the Company was on track to reach its longer-term goals:

> **We remain confident in our longer-term goals[2]** to reach an installed base of 1 million customers worldwide in 2027 and meaningfully expand our gross and operating margins despite the near-term headwinds. We are already nearly 40% of the way to our installed base target, satisfaction and demand for our t:slim X2 with Control-IQ remains high and our exciting R&D programs that are necessary to deliver on future growth ambitions remain on track.

53.    CEO Sheridan noted that that the Company was anticipating the financial impact from the pandemic and working to "offset any of those financial implications":

> Sure. I think that, as we've noted over the last couple of quarters, we have seen COVID-related effects…. [W]e're actually revising this program and we're going to be rolling it out this quarter to try to offset any of those financial implications and potential effects on that—on those decisions, just to basically make it a lot easier for people to get past that concern over the finances.

54.    CFO Vosseller confirmed that Tandem had factored in "pandemic and competitive-related" pressure into the financial guidance: "Turning to the outlook. Since the beginning of the year, we have factored pandemic and competitive-related pressure into our guidance based on what we have experienced historically. We feel that the results today are largely in line with those expectations." Vosseller later reiterated that Tandem was prepared to deal with the economic headwinds:

> So, what we factored in for the economic headwinds is that they basically persist through the end of the year, but we still anticipate that we'll begin to see that normal seasonal uptick into the fourth quarter. So, our goal is to have the enhanced programs ready to help push that uptick as we move into the back half of the (technical difficulty) in the next few months.

55.    Vosseller reassured that the reduction in guidance was entirely dependent on the recession and the Company had "good mitigations in place" to manage it:

---

[2] All emphasis is added unless otherwise noted.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

The guidance reduction was solely around [the recession]. We began to really see this at the very end of the second quarter and moving into the third quarter. So, it's something new that's obviously more difficult for us to predict, but we think we have good mitigations in place, and we'll continue to manage through it throughout the rest of the year.

56.     When a financial analyst questioned if Tandem was being over-confident in its guidance, CFO Vosseller stated that the Company was "very confident" in its ability to achieve its guidance:

We've learned how to navigate with the staffing shortages and the challenges in the HCP offices, and we expect to continue to improve on that as we look throughout the remainder of the year. The noise around the competitive launch, particularly right now is ***more temporary in nature***.

*** 

And we expect to see that noise start to dissipate in the next quarter or 2 as it becomes more widely available. The headwind with the economic environment is the one that we expect to continue and with our—some of our mitigation plans in place. And then again, just the normal pump seasonality, which will help drive people through the funnel as more and more people have met their deductibles. ***We feel confident that we can achieve that fourth quarter number …. So I'll start with the guidance part of it. We feel very confident in the number we put out there this year.***

57.     Vosseller also noted that "we don't see these economic headwinds as anything that would shift people's mindset to a different product …." and downplayed any "competitive dynamics." Sheridan emphasized that it was "macroeconomic factors" and "not the competitive issues" that were affecting the Company's sales.

58.     Financial analysts were quick to respond negatively to Tandem's abrupt revision of its optimistic guidance. Craig-Hallum Capital Group reported that the "tone and guidance change were the biggest surprise" of Tandem's earnings announcement. Craig-Hallum Capital Group analysts emphasized that they were "confounded" because when Tandem had issued 2022 guidance in the fourth quarter of 2021, the Company "noted that competitive noise was factored in the guidance" but the "2Q22's call featured competition much more than at the noise level." Citibank analysts reported that new insulin pump users in the United States were down approximately 5.6% due to "pressure from staffing shortages, and, later in the quarter, affordability, and economic headwinds." On August

9, 2022, Wells Fargo downgraded the Company's stock from "Overweight" to "Underweight," citing new competitive threats.

59.     On September 8, 2022, Defendant Sheridan and CFO Vosseller presented at the 2022 Wells Fargo Healthcare Conference. At the conference, they discussed the "headwinds" affecting Tandem's sales. Sheridan reassured "that now that we've exited August, we've seen a positive shift in the beginning of a momentum build that really confirms our assumptions in the guidance for the second half of the year." Sheridan also confirmed that Tandem had factored the pandemic and competitive challenges in its guidance and there "was no real surprise" how these factors impacted the Company.

60.     Vosseller noted that in determining the financial guidance, the Company had weighed the opportunities and risks and estimated that "over the next few quarters" the competitive pressure would start to "dissipate" and "wane."

61.     On September 13, 2022, Defendant Sheridan and CFO Vosseller presented at the Baird 2022 Global Healthcare Conference. Sheridan confirmed again that the Company had seen "a positive shift" and "the beginning of the momentum build that lines up with the guidance that we gave during the [2Q] call." Sheridan discussed the new product of one of Tandem's chief competitors, Insulet Corporation, noting that it was a "good product" "but reviews have been mixed" and "the level of competition and the effect we're seeing is in line with what our expectations were." Sheridan reiterated that "things will settle down in a quarter or [two]."

**C.     The Company Discloses Its True Financial Condition Due To The Impact From Competition And The Pandemic**

62.     On November 2, 2022, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its third quarter 2022 financial results. The Company reported a GAAP net loss of $49.0 million, compared to net income of $5.8 million. Further, the Company revised its optimistic financial guidance for the year substantially, including reducing expected sales to $800 million to $805 million versus the previous guidance of $835 to $845 million. The revised sales numbers represented annual sales growth of only 14% to 15% year-over-year. Tandem also

revised its guidance for adjusted EBITDA to approximately 7% to 8% of sales, compared to the prior

guidance of 11%of sales.

63.     On the same day, in a conference call with financial analysts and investors, Defendant

Sheridan stated that the revised guidance was due to the lingering impact of the pandemic, the

competitive market, and other economic factors, including the recession, all factors that the Company

had previously represented would not impact the 2022 guidance:

> Similar to what we discussed in our last earnings call, we've largely been pressured by 3 dynamics that continue throughout Q3. First were the pandemic-related pressures that have fluctuated throughout the past 2 years. These include an array of things from COVID case rates to endocrinology office staffing shortages. Second was the competitive environment in the United States. And third were the economic conditions, including inflation and the threat of recession.
>
> To provide an update on each of these dynamics, the broader COVID-related pressures began escalating in Q3 of last year in all our markets. It's now a consistent factor when looking at the year-over-year comparison in an environment that we anticipate operating in for the foreseeable future. The second dynamic is the competitive environment in the U.S. This intensified across the year, in line with the competitor's scaling launch of a new AID algorithm, which is on a device form factor that we've competed with historically.
>
> In surveying our sales management, the majority said the disruption associated with this launch is less than what we've experienced a few years ago when another competitive AID system launched. That being said, it creates noise in the market that we'll be navigating and managing for the few quarters.
>
> ***
>
> On the final market dynamic, the impact of the economic environment on customer purchasing behavior is primarily a U.S. phenomenon. This pressure is something that we saw build quickly at the end of Q2 and has remained steady.

64.     CFO Vosseller stated: "Due to the change in our sales guidance, we now expect our

2022 gross margin to be approximately 52%, which was the lower end of our guidance range."

Defendant Sheridan commented that the pressure on the Company's financials would continue for

the "foreseeable future":

> **[T]hese 3 dynamics continue on for the foreseeable future.** And as we indicated with our recalibration, it's very difficult to predict this. I mean we certainly are doing what we can to combat the noise from the competitive situation by promoting the strengths of our products.
>
> ***

[I]t's difficult for us to actually isolate which of the 3—the factors that we described, the 3 market dynamics are getting worse or getting better.

65.     CFO Vosseller agreed that the combination of the three factors made it difficult to predict what would happen going forward:

I'm going to follow on to John's comments a little bit about the headwinds and the fact *that it's really the combination of all of them together, which makes it so difficult and challenging to predict.* And as we thought about the guidance in setting expectations going forward, rather than trying to factor in the rate that these will improve or the timing in which they'll improve, we've assumed consistent pressure continuing throughout the year and even as we think about entering 2023. So, in this case, what we said our expectations, we're [erring] more on the cautious side and then leaving the opportunity for [ASOs to] begin to dissipate as upside for us as we look forward.

66.     A financial analyst questioned Tandem's changed guidance, asking "what had changed" to "pull down expectations":

So I'm just wondering, just given the environment, what really changed here in the last few weeks for you to pull down expectations, especially in the U.S. so much, both in Q4 and then and going forward? And what gives us the confidence that next year can even be 11% to 12% with all of these headwinds that you're now facing?

67.     Defendant Sheridan responded by admitting that the Company "didn't get it right":

Thanks, Matt. I think that's some fair questions. We mentioned that back in the June, July time frame, we saw a soft month. And in August, we absolutely saw this change in the momentum build, which was in line with what we've seen historically for the end of the third quarter. *Unfortunately, in September, we just didn't see that trend continue. We saw a continued pressure.*

I would say that we've tried to estimate the third quarter [to] take into account these 3 market dynamics, and we didn't get it right.

68.     Another financial analyst wondered how Tandem had missed its guidance by such a substantial amount, *i.e.*, $50 million: "[20]22 looks like it will come in over $50 million lower than your initial expectations. And I appreciate kind of the dynamics and the pressures you outlined there. But when you look back, what played out differently here? I'm still struggling a bit with this." Defendant Sheridan pinned the Company's abrupt reversal on a dramatic change in the economic environment:

I mean, I think the thing that we didn't anticipate when we originally set guidance, Jayson, was the macro factors that we saw come in the latter part of the second quarter. Coming into the year, we definitely were anticipating the COVID pressures. We were definitely anticipating the competitive pressures. But I think that the economic

environment changed dramatically, and I think people became a lot more sensitive to it.

69.     Following the announcement of the revised guidance and disappointing financial results, the Company's stock spiraled downward, closing at $35.72 per share on November 3, 2022, a 30.4% decline from the Company's $51.34 per share price on November 2, 2022.

70.     Several financial analysts cut their price targets for Tandem. A financial analyst at Raymond James stated: "[W]e have been on the wrong side of TNDM this year, misjudging the impact of competition, and associated deceleration in revenue growth." Another financial analyst at Craig-Hallum remarked on Tandem's poor financial performance: "[T]here is no way to sugarcoat it, Q4 guidance is poor, and conditions worsened even following a Q2 report that left the Street concerned."

71.     On November 3, 2022, Citi Research issued a report about the revised guidance including the fact that it "surprised us (and others), despite commentary at the September meetings." The report noted: "Staffing, competitive pressures, and economic conditions allowed for August seasonality that did not translate to a September acceleration, nor normalized levels in October." The report concluded that "these pressures have had a steady impact on the business since the end of 2Q22, and management expects the pressure to remain constant through [the end of 2022]."

72.     Piper Sandler reported following the Q3 results that "[c]ompetition is hurting [Tandem]…along with some macro pressures *but we believe the former [competition] is more impactful than they are letting on."*

D.     **Tandem Reports Mounting Financial Losses**

73.     On January 10, 2023, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its fourth quarter and full year 2022 financial results. In the press release, Tandem reported GAAP sales of approximately $802 million for 2022, at the low end of the revised guidance provide only a little more than two months earlier.

74.     On May 3, 2023, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its first quarter 2023 financial results. In the press release, Tandem

reported a GAAP gross profit of $82.9 million, compared to $91.1 million year-over-year and a GAAP gross margin of 49%, compared to 52% in the first quarter of 2022. The Company further reported a GAAP operating loss of $127.8 million, or negative 75% of sales, compared to an operating loss of $15.3 million or negative 9% of sales, and a GAAP net loss of $123.9 million, compared to a net loss of $14.7 million.

75.     Tandem reaffirmed its 2023 guidance of non-GAAP sales in the range of $885 million to $900 million, representing annual sales growth of 10% to 12% compared to 2022, non-GAAP gross margin of approximately 52%, and an adjusted EBITDA margin of approximately 5% to 6% of sales.

76.     On the same day, in a conference call with financial analysts and investors, Brian B. Hansen ("Hansen"), Tandem's CCO and Executive Vice President ("EVP") touted the Company's experience selling in a challenging environment:

> As we look at the broader commercial environment, the start to the year was largely consistent with what we've seen exiting 2022. While there were pressures associated with the competitor's new product launch in the United States, which created noise and delayed decision-making. ***The experience we've gained selling in this environment will benefit us in the back half of this year***.

77.     On August 3, 2023, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its second quarter 2023 financial results. In the press release, Tandem reported GAAP gross profit of $101.7 million, compared to $101.9 in the comparable period of 2022, and GAAP gross margin of 52%, compared to 51%. The Company also reported a GAAP operating loss of $38.8 million, or negative 20% of sales, compared to a previous operating loss of $12.2 million, adjusted EBITDA of $5.3 million, or 3% of sales, compared to $11.4 million, or 6% of sales, and a GAAP net loss of $35.8 million, compared to a net loss of $15.1 million in the second quarter of 2022.

78.     In the press release, Tandem revised its 2023 financial guidance for non-GAAP sales to at least $785 million, with sales in third quarter of at least $190 million, non-GAAP gross margin

of approximately 51%, and an adjusted EBITDA margin that would at least breakeven as a percentage of sales.

79.     On the same day, on a conference call with financial analysts and investors, Defendant Sheridan discussed the Food and Drug Administration's approval of Tandem's new Mobi product, but stated it was "difficult to predict" the effect on sales for the remainder of the year due to the "pausing dynamic we've seen historically with new product launches between the time the FDA clears the product and its availability." Consequently, Defendant Sheridan noted that ***"in combination with an increasingly competitive environment worldwide***, we feel it's prudent to reset our 2023 guidance with a low point for expectations and a starting baseline for 2024, while we focus on driving the business."

80.     CFO Vosseller also commented on the revised guidance but confirmed that Tandem was "confident that even with these unusual demand dynamics, at a minimum, we can achieve worldwide sales of $190 million in the third quarter and $785 million for the full year."

81.     A financial analyst questioned the sudden guidance adjustment and the Company's approach to its 2023 guidance:

> I wanted to go back to the guidance adjustment and what you guys are factoring in today that you didn't have visibility on at the beginning of the year? Because if I go back and look, I mean, the timing of the Mobi approval seems pretty much in line with what you were assuming back when you first guided for '23. So why only now factor in this pause and why the big shift and how you think the back half of the year is going to play out?

82.     In response, Defendant Sheridan noted:

> It's just difficult to anticipate what the revenue is going to be like in the back half because of Mobi pausing … and then there is some competitive dynamics as well. So, it's just, I think, rather than try to guess, we're just taking a conservative approach with guidance, and we're just trying to risk reduce public expectations.

83.     On August 17, 2023, Tandem filed with the SEC a Current Report on Form 8-K announcing the abrupt resignation of CCO Hansen, effective December 31, 2023. Hansen was appointed as CCO in 2016.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

84.     On November 1, 2023, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its third quarter 2023 financial results. In the press release, Tandem reported GAAP gross profit of $89.8 million, compared to $104.4 million and GAAP gross margin of 48%, compared to 51%. Tandem also reported a GAAP operating loss of $31.5 million, or negative 17% of sales and a GAAP net loss of $33.0 million.

85.     Tandem again revised downward its 2023 financial guidance for non-GAAP sales to "at least $765 million."

86.     On November 11, 2023, Tandem filed with the SEC a Current Report on Form 8-K disclosing that David B. Berger ("Berger"), the Company's EVP and COO, would be resigning from his position effective December 31, 2023. The Company provided no details regarding the circumstances behind Berger's resignation.

**E.      Tandem Is Sued In A Securities Class Action Lawsuit**

87.     On September 8, 2023, a securities class action lawsuit was filed in the Southern District of California against Tandem, Sheridan, and Vosseller, captioned *Lowe v. Tandem Diabetes Care, Inc., et al*, No. 3:23-cv-01657-H-BLM (S.D. Cal.). On February 1, 2024, an amended complaint was filed, including statements from confidential witnesses, and charging the named defendants with violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, and SEC Rule 10b-5 promulgated thereunder. The lawsuit seeks damages on behalf of persons or entities who purchased Tandem securities between August 3, 2022, and November 2, 2022, inclusive. The lawsuit alleges that the defendants made false and misleading statements in Tandem's public filings by concealing or materially downplaying the negative market conditions relating to competition and the pandemic faced by Tandem.

**1.      Confidential Witnesses in the Securities Class Action Confirm that Competition and Pandemic-Related Factors Drove Tandem's Declining Sales in the Second Half of 2022**

88.     According to confidential witnesses cited in the Securities Class Action amended complaint, in the summer of 2022, negative market conditions, including pandemic-related

unemployment and competition were severely impacting the Company's sales. For example, Insulet Corporation and Medtronic PLC, two of Tandem's chief competitors, had already released or would soon be releasing new insulin pumps, which caused a downturn in the Company's target sales of its own insulin pumps. Further, according to these witnesses, Tandem's revenue projections during the second half of 2022 did not account for negative sales information being provided to the Company's sales team. One of the witnesses and other sales team members routinely warned Tandem's senior management that the sales quotas set by management were too high, given the adverse market conditions. Despite knowing that sales targets set for the third quarter of 2022 were unattainable, senior management did not change them. Indeed, one of the witnesses attested that senior management set arbitrary sales targets based on previous quarters.

### F.    Tandem's False And Misleading Proxy Statement

89.    On April 12, 2023, the Company filed its 2023 Proxy Statement with the SEC soliciting shareholder votes to, among other things, re-elect Defendants Sheridan, Blickenstaff, Cha, Howell, Malagueira, McGroddy-Goetz, and Twomey and approve executive compensation. The Proxy Statement was authorized by the Board and signed by Defendant Sheridan.

90.    The 2023 Proxy Statement represents that the Board oversees and monitors the Company's risk exposures:

> Management and our board of directors [assess] the Company's risk environment on at least a quarterly basis to ensure we are adequately anticipating future exposure to liability. The board…works closely with management, and outside advisors (as needed) on the identification, evaluation and management of short-, medium- and long-term risks to ensure they are prioritized on a timely basis. Risks are typically categorized based on the potential probability and severity of the risk and addressed or escalated as appropriate. Our risk assessment process aligns with our disclosure controls and procedures. When a board committee is responsible for evaluating and overseeing the management of particular risks, the chair of the relevant committee typically reports to the full board of directors during the next board meeting.

91.    The 2023 Proxy Statement represents that the Audit Committee is engaged in vigorous oversight over the adequacy of the Company's internal controls, including "reviewing and discussing the adequacy and effectiveness of our accounting and financial reporting processes and internal controls and the audits of our financial statements."

92.     The 2023 Proxy Statement represents that the Nominating and Corporate Governance Committee is engaged in robust oversight over risk and risk management including by "reviewing and assessing risk and risk management guidelines with respect to day-to-day operations," and "reviewing … governance risks and practices."

93.     The foregoing statements in the 2023 Proxy Statement were false and misleading and omitted material information. Contrary to the representations made in the Proxy, the Board was required, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

94.     On May 26, 2023, Tandem filed with the SEC a Current Report on Form 8-K announcing, among other things, the re-election of Defendants Sheridan, Blickenstaff, Cha, Howell, Malagueira, McGroddy-Goetz, and Twomey and the approval of executive compensation.

VI.     **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

95.     Plaintiff brings this action derivatively and for the benefit of Tandem to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and officers of Tandem and violations of Section 14(a) of the Exchange Act, and to seek contribution for violations of Section 21D of the Exchange Act, as well as the aiding and abetting thereof.

96.     Tandem is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

97.     Plaintiff is, and has been at all relevant times, a stockholder of Tandem and was a stockholder of the Company at the time of the misconduct alleged herein. Plaintiff will adequately

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

and fairly represent the interests of Tandem in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to prosecute this action.

98.     Demand upon the Board to institute this action against the Individual Defendants would be futile and is, therefore, excused. The Board is neither disinterested nor independent.

### A.     Demand Upon Defendant Sheridan Is Excused

99.     Defendant Sheridan is President and CEO of Tandem since 2019. Sheridan therefore is not independent. Indeed, Tandem's 2023 Proxy Statement does not list Sheridan as an independent director.

100.    As an employee of Tandem, the Company provides Defendant Sheridan with his principal occupation from which he receives substantial compensation, including $6,378,515 in 2022, and $5,739,882 in 2021. Thus, Defendant Sheridan could not consider a demand for action that might require him to sue the directors who control his continued employment or fellow members of management with whom he works on a day-to-day basis.

101.    Sheridan is named as a defendant in the pending Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

102.    According to the Company's 2023 Proxy Statement, Defendant Sheridan and CFO Vosseller have a personal relationship and share a primary residence. CFO Vosseller reports directly to Defendant Sheridan. As such, Defendant Sheridan is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

103.    Sheridan signed the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

104.    Sheridan benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Tandem Board through the false and misleading statements and material omissions in the 2023 Proxy Statement.

105.    Sheridan, as a director of Tandem, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

106.    Sheridan is neither independent nor disinterested. Any demand upon Defendant Sheridan is futile and, thus, excused.

**B.    Demand Upon Defendant Robertson Is Excused**

107.    Robertson authorized the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

108.    Robertson, as a director of Tandem, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

109.    Robertson is neither independent nor disinterested. Any demand upon Defendant Robertson is futile and, thus, excused.

**C.    Demand Upon Defendant Allen Is Excused**

110.    Allen authorized the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

111.    Allen is personally involved with JDRF, a nonprofit diabetes research organization and served as Chairman of the International Board of Directors of JDRF. Tandem and JDRF have partnered on various diabetes-related initiatives since 2009.[3] Tandem is a national sponsor of JDRF

---

[3] https://www.jdrf.org/corporate-partners/tandemdiabetescare/.

TypeOneNation Summits, supports numerous local JDRF One Walks and Galas, and is a long-standing member of JDRF's Industry Advisory Panel.[4] In 2020, Tandem and JDRF announced a national partnership to help drive awareness and education on topics related to technological innovation, diabetes management, and healthcare for people with diabetes.[5] In 2021, Tandem donated between $250,000-$499,999 to JDRF.[6] Therefore, Allen is precluded from investigating or acting against the other members of Tandem's Board with the required independence and disinterest.

112.    Allen, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Tandem's compliance with relevant laws, rules, and regulations. Allen utterly failed to perform these essential duties.

113.    Allen, as Chair of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Tandem's corporate governance policies. Allen utterly failed to perform these duties.

114.    Allen, as a director of Tandem was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

115.    Allen is neither independent nor disinterested. Any demand upon Defendant Allen futile and, thus, excused.

---

[4] *Id.*

[5] https://www.jdrf.org/press-releases/jdrf-and-tandem-diabetes-care-partner-to-help-educate-and-support-the-t1d-community/.

[6] https://www.jdrf.org/wp-content/uploads/2022/06/FY22DonorHonorRoll.pdf.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**D.     Demand Upon Defendant Blickenstaff Is Excused**

116.    Defendant Blickenstaff served as Tandem's President and CEO from September 2007 until March 2019.  Blickenstaff therefore is not independent. Indeed, Tandem's 2023 Proxy Statement does not list Blickenstaff as an independent director.

117.    Blickenstaff authorized the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

118.    Blickenstaff benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Tandem Board through the false and misleading statements and material omissions in the 2023 Proxy Statement.

119.    Blickenstaff has a business relationship with Defendant Twomey which precludes him from acting in an independent and disinterested manner. Blickenstaff and Twomey worked closely together at Biosite Inc. ("Biosite")[7] before joining the Tandem Board. Blickenstaff founded Biosite and served as Chair and CEO of the company from 1988 until its acquisition by Inverness Medical Innovations, Inc. in June 2007. During that period, Twomey held various positions with Biosite, most recently serving as Senior Vice President, Finance and CFO.

120.    Blickenstaff, as a director of Tandem, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

121.    Blickenstaff is neither independent nor disinterested. Any demand upon Defendant Blickenstaff is futile and, thus, excused.

---

[7] *See, e.g.*, https://www.sec.gov/Archives/edgar/data/834306/000119312507089800/dex991.htm.

### E. Demand Upon Defendant Cha Is Excused

122. Cha authorized the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

123. Cha benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Tandem Board through the false and misleading statements and material omissions in the 2023 Proxy Statement.

124. Cha, as a director of Tandem was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

125. Cha is neither independent nor disinterested. Any demand upon Defendant Cha is futile and, thus, excused.

### F. Demand Upon Defendant Howell Is Excused

126. Howell authorized the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

127. Howell benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Tandem Board through the false and misleading statements and material omissions in the 2023 Proxy Statement.

128. Howell, as a director of Tandem, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

129.    Howell is neither independent nor disinterested. Any demand upon Defendant Howell is futile and, thus, excused.

**G.    Demand Upon Defendant Malagueira Is Excused**

130.    Malagueira authorized the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

131.    Malagueira benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Tandem Board through the false and misleading statements and material omissions in the 2023 Proxy Statement.

132.    Malagueira, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Tandem's compliance with relevant laws, rules, and regulations. Malagueira utterly failed to perform these essential duties.

133.    Malagueira, as a director of Tandem, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

134.    Malagueira is neither independent nor disinterested. Any demand upon Defendant Malagueira is futile and, thus, excused.

**H.    Demand Upon Defendant McGroddy-Goetz Is Excused**

135.    McGroddy-Goetz authorized the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

136.    McGroddy-Goetz benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Tandem Board through the false and misleading statements and material omissions in the 2023 Proxy Statement.

137.   McGroddy-Goetz, as a member of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Tandem's corporate governance policies. McGroddy-Goetz utterly failed to perform these duties.

138.   McGroddy-Goetz, as a director of Tandem, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

139.   McGroddy-Goetz is neither independent nor disinterested. Any demand upon Defendant McGroddy-Goetz is futile and, thus, excused.

**I.     Demand Upon Defendant Sodhi Is Excused**

140.   Sodhi authorized the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

141.   Sodhi, as a member of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Tandem's corporate governance policies. Sodhi utterly failed to perform these duties.

142.   Sodhi, as a director of Tandem, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

143.   Sodhi is neither independent nor disinterested. Any demand upon Defendant Sodhi is futile and, thus, excused.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1

**J.      Demand Upon Defendant Twomey Is Excused**

2      144.      Twomey authorized the 2023 Proxy Statement containing false and misleading

3  statements and material omissions and faces a substantial likelihood of liability therefor.

4      145.      Twomey benefited from the violation of Section 14(a) of the Exchange Act pled herein

5  by securing re-election to the Tandem Board through the false and misleading statements and material

6  omissions in the 2023 Proxy Statement.

7      146.      Twomey has a business relationship with Defendant Blickenstaff which precludes him

8  from acting in an independent and disinterested manner. Twomey and Blickenstaff worked closely

9  together at Biosite before joining the Tandem Board. Blickenstaff founded Biosite and served as

10  Chair and CEO of the Company from 1988 until its acquisition by Inverness Medical Innovations,

11  Inc. in June 2007. During that period, Twomey held various positions with Biosite, most recently

12  serving as Senior Vice President, Finance and CFO.

13      147.      Twomey, as Chair of the Audit Committee, had duties regarding oversight of the risks

14  facing the Company and Tandem's compliance with relevant laws, rules, and regulations. Twomey

15  utterly failed to perform these essential duties.

16      148.      Twomey, as a director of Tandem, was required to, but failed to: (1) implement and

17  maintain an effective system of internal controls to ensure that the Company was complying with all

18  laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and

19  complete statements regarding its core operations, financial condition, and business prospects; (2)

20  effectively oversee and monitor the material risks facing the Company; and (3) investigate and take

21  action when presented with red flags regarding misconduct or the lack of internal controls.

22      149.      Twomey is neither independent nor disinterested. Any demand upon Defendant

23  Twomey is futile and, thus, excused.

24

25

26

27

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

### K. Other Factors Demonstrating That Demand Upon The Tandem Board Is Excused

150.     Tandem has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

151.     The members of the Tandem Board received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have thus benefited from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

152.     Publicly traded companies, such as Tandem, typically carry director & officer liability insurance from which the Company could potentially recover some or all its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover Tandem's damages.

## VII.     CLAIMS FOR RELIEF

### COUNT ONE
### Against the Individual Defendants for
### Violations of Section 14(A) of the Exchange Act

153.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as if fully set forth herein.

154.     The Section 14(a) claim alleged herein is based solely on negligence. It is not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. Section 14(a) claim alleged herein does not allege and does not sound in fraud. Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference to, any allegation of fraud, scienter, or recklessness with regard to those non-fraud claims.

155.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or

for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

156.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

157.    Under the direction and watch of the Individual Defendants, the 2023 Proxy Statement failed to disclose that the Individual Defendants each violated their fiduciary duties to Tandem and its stockholders by, among other things, failing to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. Further, the Proxy Statement contained false and misleading statements related to risk oversight by the Board and the Company's commitment to strong corporate governance principles.

158.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2023 Proxy Statement were materially false and misleading and omitted material information.

159.    The false and misleading statements in, and information omitted from the 2023 Proxy Statement was material to Tandem's shareholders in determining whether to, among other things, re-elect Defendants Sheridan, Blickenstaff, Cha, Howell, Malagueira, McGroddy-Goetz, and Twomey to the Board and approve executive compensation.

160.   The material misstatements and omissions in the Proxy Statement damaged the Company.

161.   Plaintiff, on behalf of Tandem, seeks relief for damages inflicted upon the Company based on the misleading 2023 Proxy Statement in connection with the improper election of Defendants Sheridan, Blickenstaff, Cha, Howell, Malagueira, McGroddy-Goetz, and Twomey, and the approval of executive compensation.

### COUNT TWO
### Against the Individual Defendants
### for Breach of Fiduciary Duties

162.   Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

163.   The Individual Defendants owed and owe fiduciary duties to Tandem. By reason of their fiduciary relationships, the Individual Defendants specifically owed and owe Tandem the highest obligation of good faith and loyalty in the administration of Tandem's affairs. The Board also had specific fiduciary duties as defined by the Company's corporate governance documents and principles that, had they been discharged in accordance with the Board's obligations, would have prevented the misconduct and consequential harm to Tandem alleged herein.

164.   The Individual Defendants ignored their obligations under state and federal law. The Individual Defendants failed to make a good faith effort to correct the problems or prevent their recurrence.

165.   The Individual Defendants each violated their fiduciary duties to Tandem and its stockholders by, among other things, failing to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tanem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. As a direct and proximate result of the

Individual Defendants' breaches of their fiduciary obligations, Tandem has sustained and continues to sustain significant damages and its reputation has been irreparably damaged.

166.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. Plaintiff on behalf of Tandem has no adequate remedy at law.

**COUNT THREE**
**Against the Individual Defendants for**
**Contribution for Violations of 21D of the Exchange Act**

167.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

168.     The conduct of the Individual Defendants, as described herein, has exposed the Company to significant liability under various federal securities laws by their misconduct.

169.     Tandem is named as a defendant in a related securities class action lawsuit that alleges and asserts claims arising under the federal securities laws. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Tandem is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Individual Defendants as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

170.     As officers and directors, the Individual Defendants had the power or ability to, and did, control or influence, either directly or indirectly, Tandem's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

171.     The Individual Defendants are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

172.    The Individual Defendants have damaged the Company and are liable to the Company for contribution.

**COUNT FOUR**
**Against the Individual Defendants**
**for Aiding and Abetting**

173.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

174.    Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

175.    In committing the wrongful acts, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. They have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, and/or assisted, each other in breaching their respective duties.

176.    Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

177.    Each of the Individual Defendants aided and abetted each other and rendered substantial assistance in the wrongs complained of herein.

**VIII.    PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Tandem and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants violated Section 14(a) and Section 21D of the Exchange Act;

(c)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Tandem;

(e)      Directing the Company to take all necessary actions to reform and improve its internal controls and Board oversight;

(f)      Determining and awarding to Tandem the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(g)      Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

(h)      Awarding Tandem restitution from the Individual Defendants, and each of them;

(i)      Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' fees, consultant fees, and experts fees, costs, and expenses; and

(j)      Granting such other and further relief as the Court may deem just and proper.

## IX.     JURY DEMAND

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: March 29, 2024

OF COUNSEL:

**WEISS LAW**
David C. Katz
Mark D. Smilow
305 Broadway, 7th Fl.
New York, NY 10007
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: dkatz@weisslawllp.com
     msmilow@weisslawllp.com

Joshua M. Rubin
Jonathan Meer
4 Brighton Rd., Ste. 204
Clifton, NJ 07014
Email: jrubin@weisslawllp.com
     jmeer@weisslawllp.com

**WEISS LAW**

By:   */s/ Joel E. Elkins*
Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  (310) 208-2800
Facsimile:   (310) 209-2348
Email: jelkins@weisslawllp.com

*Attorneys for Plaintiff*

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT